UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:03CV-101-M

SUSAN OTT                                                                                                       PLAINTIFF

v.

FORD MOTOR COMPANY                                                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Plaintiff for relief from the scheduling order to allow her to amend her exhibit list to add certain recently discovered documents involving roof structure testing conducted by Volvo and to have said documents deemed authentic [DN 53]. These documents include Volvo rollover tests, Volvo crashworthiness test reports, roof crush tests, and correspondence relating to roof crush. Plaintiff has filed the documents in question under seal [DN 66]. Ford Motor Company objects to Plaintiff's motion and seeks to exclude any evidence related to the Volvo XC-90 or any roof structure testing conducted by Volvo. In the alternative, Ford requests oral arguments on this matter [DN 64].

## BACKGROUND

This product liability action involves a single vehicle rollover accident on October 19, 2000, which resulted in the death of Daniel Ott. At the time of the accident, Mr. Ott was operating a 2000 Ford F-250 Super Duty pickup truck in Webster County. The vehicle in question was manufactured on June 28, 2000. Plaintiff alleges defects in the design,

manufacture and/or marketing of the vehicle regarding its restraint system and roof support.

Kentucky imposes strict liability on "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer." Nichols v. Union Underwear Co, Inc., 602 S.W.2d 429, 431 (Ky. 1980)(citing Restatement (Second) of Torts § 402A). "A defect is shown when the plaintiff is able to establish 'that an ordinarily prudent company engaged in the manufacture of the [product], being fully aware of the risk, would not have put it on the market . . .'" McGuire v. Alpinestars S.P.A., 2005 WL 1503569, *6 (W.D. Ky. June 22, 2005)(quoting Nichols, 602 S.W.2d at 433). The Kentucky Supreme Court has set forth a non-exhaustive list of factors to be taken in account in determining whether a product is defective: (1) feasibility of making a safer product; (2) patency of the danger; (3) warnings and instruction; (4) subsequent maintenance and repair; (5) misuse; and (6) the product's inherently unsafe characteristics. Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780-81 (Ky. 1984).

## DISCUSSION

Plaintiff seeks to amend her exhibit list to add recently discovered Volvo documents that were admitted recently in other rollover cases against Ford Motor Company. Some of the documents record testing conducted by Volvo, a wholly owned subsidiary of Ford since March of 1999, regarding the performance of vehicle roof structures during rollover events. The remainder of the documents have been described as "internal memoranda discussing the correlation between roof collapse [and] seatbelt performance . . . to injury causation in rollovers." [Exhibit 2 to Plaintiff's Motion].

Plaintiff argues that these documents are relevant because they demonstrate that Ford's own subsidiary, Volvo, was conducting tests which demonstrate the role of roof structure and occupant restraint design in preventing injuries and which contradict the positions taken by Ford and its experts in this case related to injury causation. Specifically, Plaintiff contends that Ford has maintained, and continues to maintain, that in rollover accidents, all occupants "dive" into the roof prior to the collapse of the roof; and that as a result, roof strength is not a crucial factor in rollover crashes. According to Plaintiff, the testing which is included in these Volvo documents suggests that the vehicle roofs crushed prior to the occupant making contact. Additionally, Plaintiff maintains that these documents demonstrate industry practice and state-of-the-art which is relevant to the question of whether a product design is unreasonably dangerous. Finally, Plaintiff contends that the documents establish the availability and feasibility of a safer alternative design since the design proposed by Plaintiff was being incorporated by another manufacturer.

Ford objects to Plaintiff's motion and seeks to exclude any evidence related to the Volvo XC-90 or any roof structure testing conducted by Volvo arguing that the documents are not relevant in this design defect case. In support of its position, Ford first argues that the subject 2000 Ford F-250 Super Duty pickup truck is based on a design platform began in 1994 and that the documents and testimony pertaining to the design, manufacture or testing of the 2003 Volvo XC-90, a Sports Utility Vehicle, were not available to Ford before the F-250 was designed. Additionally, Ford maintains that the Volvo documents are not relevant because the 2003 Volvo XC-90, a sports utility vehicle, and the 2000 Ford F-250

3

Super Duty truck are dissimilar. Specifically, Ford asserts that these vehicles are manufactured by different companies at different times and contain different component parts including different platforms, different body dimensions and frames. Finally, Ford argues that many other courts across the country have ruled that the Volvo documents, information, and testimony should not be produced or admitted into evidence because they are not relevant.

From the Court's initial review of the Volvo documents, it appears that the documents are relevant to the issue of the relationship between the roof structure, the occupant restraint design and the injuries sustained in rollover accidents. Plaintiff represents that the position of Ford and its experts in this case is that in rollover accidents, roof strength is not a crucial factor given that all occupants "dive" into the roof prior to the collapse of the roof. Plaintiff contends that the testing conducted by Volvo and the internal memoranda refute this argument demonstrating instead that in rollover accidents, the forces to the occupant's head are dramatically minimized with a strong roof and a proper seat belt system. Noticeably, Ford failed to address this contention in its response to the motion for relief from the scheduling order. After reviewing the documents, the Court agrees with the Plaintiff and finds that the Volvo documents are relevant to the issue of causation and appear to contradict or impeach the position Ford and its experts have taken in this case regarding the importance of roof strength in rollover crashes, while supporting the Plaintiff and her experts' position. Thus, the Court will permit the Plaintiff to amend her exhibit list to add the Volvo documents. Having determined that the documents are relevant and having granted

4

Plaintiff's motion for relief from the scheduling order, the Court will not address the remainder of the parties' arguments.

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff for relief from the scheduling order to amend her exhibit list to add the Volvo documents [DN 53] is **granted.  No later than October 21, 2005,** Defendant shall respond to Plaintiff's request for authentication.  Defendant's request to have an oral argument on this matter [DN 64] is **denied**.

## OTHER PENDING MOTIONS

The parties have filed extensive objections to exhibit and witness lists and numerous motions in limine.  Defendant stated in its response to Plaintiff's Motion in Limine that it intended to seek leave to amend its witness and exhibit list.  In the August 22, 2005, telephonic conference, counsel represented that the parties were going to attempt to resolve many of the objections and motions in limine.  Further, the parties represented to Magistrate Judge E. Robert Goebel that if the Court permitted the Plaintiff to amend her exhibit list to add the Volvo documents, the parties would petition the Court to reopen discovery.

Given the foregoing, the Court will not address the remaining motions and objections at this time.  The parties shall file any motions they deem necessary with respect to reopening discovery **on or before October 21, 2005**.

cc: counsel of record